THOMPSON, Judge.
The plaintiff appeals from a judgment in her favor, contending that the trial court erred in denying her challenge to the racial composition of the jury. We affirm.
Sandra Gennie filed this action on behalf of herself and her daughter, Chasity Gennie, against Hope VanHorne and Allstate Insurance Company, VanHorne’s automobile insurer, for damages based on injuries they had sustained as passengers in an automobile *268 accident.[1] The case against VanHorne proceeded to trial. After the jury was selected, counsel for Gennie challenged 5 of defense counsel’s 11 peremptory strikes, under the authority of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The trial court conducted a hearing on the Batson motion. In making her challenges, counsel for Gennie alleged that the strikes were motivated by racial discrimination. Counsel for VanHorne responded to the challenges by giving racially neutral reasons for the strikes. After the hearing, the trial .court denied the Batson motion, finding that each challenged strike was based upon a legitimate reason, and the case proceeded to trial. The jury found for VanHorne on Chasity Gennie’s claim and awarded $550 to Sandra Gennie on her own claim. The court entered a judgment on that verdict and entered an order making the judgment final pursuant to Rule 54(b) Ala. R. Civ. P. Sandra Gennie appeals, arguing that the court improperly denied her Batson challenges.
Our Supreme Court applied Batson in Ex parte Branch, 526 So.2d 609 (Ala.1987). That court has determined that “the fundamental object of [Batson arid its ’pr°geny] ... was to prevent purposeful discrimination in the jury selection process, ...” Nix v. Chilton County Comm’n, 667 So.2d 719, 721 (Ala.1995). “So long as there is a legitimate nonracial reason for the challenged strike, the Batson principles are not violated.” Zanders v. Alfa Mutual Ins. Co., 628 So.2d 360, 361 (Ala.1993).
Extending the ruling in Batson to civil actions, our Supreme Court set forth the requirements necessary to establish a prima facie case-of discrimination:
“‘[Wjhen the objecting party shows that “he is a- member of a cognizable racial group” and that the “relevant circumstances raise an inference” that his opponent “has exercised peremptory challenges to remove from the venire members of [the objecting party’s] race,” the objecting party has made out a prima facie case of purposeful discrimination.’ ”
Thomas v. Diversified Contractors, Inc., 551 So.2d 343, 345-46 (Ala.1989) (quoting Fludd v. Dykes, 863 F.2d 822, 829 (11th Cir.1989)). Once a prima facie case has been established, the burden shifts to the proponent of the strike to provide a clear, specific and legitimate nondiscriminatory reason for the challenge. Ex parte Branch, 526 So.2d at 623. “ ‘The “explanation need not rise to the level justifying exercise of a challenge for cause,” ...; rather, it need only be “a neutral explanation related to the particular case to be tried.” ’ ” Thomas, 551 So.2d at 346 (quoting Fludd, 863 F.2d at 829.)
Our Supreme Court has held that the appellate standard of review on Batson rulings is extremely limited. Ex parte Brown, 686 So.2d 409 (Ala.1996). Trial court rulings on Batson challenges will not be reversed unless they are found to be clearly erroneous. Id. The court in Ex parte Brown stated:
“ ‘It is within the sound discretion of the trial court to determine if peremptory challenges of black jurors were motivated by inténtional racial discrimination. The court’s findings in this regard are afforded great deference and will not be reversed on appeal absent clear error.' ”
686 So.2d at 420 (quoting earlier cases).
The trial court found that Gennie had made a prima facie showing of a Batson violation. This finding placed the burden on VanHorne to establish race-neutral reasons for the challenged peremptory strikes.
Gennie contends that the race-neutral reason given in regard to Juror 39, was based on a reason not supported by the record. The reason was that the juror appeared to be hard of hearing. Gennie argues that, if Juror 39’s hearing problem was a genuine concern for VanHorne’s attorney, he should have questioned the juror specifically on this issue. We disagree. A portion of *269 counsel’s explanation appears in the record as follows:
“[Juror 39] this morning had to ask the questions be repeated. And on Monday, during examination and identification of the previous case, again was the only juror out of a total of 41 that either couldn’t hear or didn’t understand and appreciate the basic questions asked by the Court in the jury identification. The Court had to ask [Juror 39] each of the questions that all of the other jurors were able to answer on their own. And I think, again, that the defendant would have the right to strike him on the basis that there might be a legitimate concern that [Juror 39], for whatever reason, might not be able to sit as a juror and listen and understand and comprehend all of the evidence and the law that the Court charges on at a later time.”
In contrast, counsel for Gennie points out, in her brief, that the record does not reflect a single instance during voir dire examination prior to the trial in which Juror 39 requested that a question be repeated. We note that counsel for VanHorne had attended the voir dire examination during an earlier trial (as had counsel for Gennie), and that it was during the •prior examination that counsel for VanHorne claims Juror 39 had asked for questions to be repeated. The voir dire examination in the prior proceeding is not included in the record on this appeal; thus, we are unable to review this evidence. Because the record before us lacks a portion of the evidence upon which the peremptory strike was based, we must give deference to the determination of the trial judge, who was present and who personally observed both voir dire examinations. See Bell v. Lowery, 619 So.2d 1380, 1381 (Ala.1993). Additionally we note that a peremptory strike exercised because a juror appeared inattentive and hard of hearing has been determined to be race-neutral as against a Batson challenge. See Nesbitt v. State, 531 So.2d 37 (Ala.Cr.App.1987); Avery v. State, 545 So.2d 123, 126 (Ala.Cr.App.1988).
Counsel for Gennie argues that the peremptory strike eliminating Juror 14 was a Batson violation. Counsel for VanHorne says the strike was proper because, he says, his notes reflected that the juror’s wife worked in a nursing home in a job similar to the one held by the plaintiff and that the juror had experienced a back injury similar to the one suffered by the plaintiff. Counsel for Gennie does not dispute these factors as potential sources for bias, but argues that Juror 14 never commented on his back injury or on his wife’s job during voir dire, and, therefore,, that these reasons given by Van-Home’s counsel were merely a sham or pretext. Counsel for VanHorne argues that he obtained this information in the same manner in which he learned of Juror 39’s hearing problem, by observing the voir dire examination in the prior case. Again, we are required to give deference to the trial judge. Bell, 619 So.2d at 1381. Further, we note that, had counsel for VanHorne made an error in his notes pertaining to this juror, as long as the. mistake was based on an honest belief and constituted a race-neutral reason, the strike would survive a Batson challenge. Taylor v. State, 666 So.2d 36, 42 (Ala.Cr.App.1994). Thus, we do not find the trial court’s denial of the Batson objection to the strikes against Juror 14 and Juror 39 to be clearly erroneous, solely on the basis that the reasons given for the strikes were not supported by the record.
Counsel for Gennie argues that the peremptory strikes made against Juror 5, Juror 9, and Juror 16 demonstrated a pretext on the part of counsel for VanHorne; counsel says those jurors were struck for factors that also applied to white members who remained on the jury. The evidence contained in the record does not support this argument. A review of the voir dire examination reflects, that Juror 5 had' a daughter and á granddaughter who had been involved in an accident and that she also had a history of back problems and chiropractic treatment. Although one or more of these characteristics applied to several white potential jurors, no other potential juror possessed this combination of characteristics. In reviewing the responses of Juror 9 and Juror 16, we note that these potential jurors made no response when the entire jury venire was asked whether they had been plaintiffs in a lawsuit. However, in response to a later question *270 pertaining to acquaintance with attorneys, both of these jurors stated they had been plaintiffs in a lawsuit. Counsel for Van-Horne said-that the failure of these jurors to respond earlier when that specific question was asked raised significant concerns regarding these jurors’ ability to listen and fully comprehend the trial proceedings. We conclude' that all potential jurors who had been involved in civil lawsuits and revealed some hesitancy about disclosing this fact were struck, and thus were 'treated equally. Therefore, we cannot say that the trial court’s denial of the Batson challenge as to Jurors 5, 9, and 16 was clearly erroneous.
Finally, counsel for Gennie contends that the' triaR court failed to place the proper burden of proof upon VanHome to provide clear explanations for his strikes in order to rebut what Gennie sáys was á strong prima facie showing of discrimination. She contends that, under the criteria necessary to make a prima facie showing of discrimination, which are set forth in Ex parte Bird, 594 So.2d 676 (Ala.1991), she ha'd established an especially strong prima facie case. In Ex parte Bird, the Supreme Court provided the following noninclusívé list of illustrations of ' evidence that could be used to raise an inference of discrimination:
“ 1. Evidence that the “jurors in question share[d] only this one characteristic— their membership in the group — and that in all other respects they [were] as heterogeneous as the community as a whole.” ...
“‘2. A pattern of strikes against black jurors on the particular venire; e.g., 4 of 6 peremptory strikes were used to strike black jurors_
“3. The past conduct,, of the .;. attorney in using. peremptory challenges to strike all blacks from the jury venire....
‘4., The type and manner of the [striking] attorney’s questions and statements during-voir dire, including-nothing more than desultory voir dire....
“ ‘5. The type and manner of questions directed to the challenged juror, including a lack of questions or a lack of meaningful questions.
‘“6. Disparate treatment of members of the jury venire with the same characteristics, or who answer a question in the same ... manner....
“ ‘7. Disparate examination of members of the venire....
‘“8. Circumstantial evidence of intent may be proven by disparate impact where all or most of the challenges were used to strike blacks from the jury....
“ ‘9. The [party making the challenged strikes] used peremptory challenges to dismiss all or most black jurors.... ”
594 So.2d at 679-80 (quoting Ex parte Branch, 526 So.2d 609, 622-23 (Ala.1987)). The Ex parte Bird court further explained:
“[T]he strength of the prima facie case [made by the party challenging the strike] depends, in large part, on the number of these factors present. Although a prima facie case is always rebuttable, the existence of a number of suspicious factors requires a more cogent explanation in rebuttal.” .
594 So.2d at 680 (emphasis in original).
The record reflects evidence of the type described in item 9, e.g., counsel for Van-Home used 5 of his 11 peremptory challenges to strike all of the black jurors on the venire. Thus, the trial judge correctly determined that a prima facie case had been established. However, we are not persuaded by Gennie’s argument that she had made an especially strong prima facie case. There was no evidence of any of the other factors listed in Ex parte Bird.
Further, from a review of the record, we conclude that the trial court, in conducting its hearing on the Batson challenges, acted in conformity with the procedure recommended by our Supreme Court in Ex parte Branch, 526 So.2d 609 (Ala.1987). The judgment of the trial court is due to be affirmed.
AFFIRMED
ROBERTSON, P.J., and YATES and MONROE, JJ., concur.
CRAWLEY, J., concurs in the result.

. She subsequently amended her complaint to include claims against the insurer alleging breach of contract, bad faith refusal to pay claims, breach of a duty of good faith and fair dealing, negligent misrepresentation, and the tort of outrage. The claims -against the insurer were then bifurcated from those against VanHorne. The claims filed against Allstate have proceeded separately and are not a part of this appeal.